**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GIPSON MECHANICAL** | ) | |
| **CONTRACTORS, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:18-cv-00768** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **U.A. LOCAL 572 OF THE UNITED** | ) | |
| **ASSOCIATION OF THE JOURNEYMEN** | ) | |
| **AND APPRENTICES OF THE PLUMBING** | ) | |
| **AND PIPEFITTERS INDUSTRY OF THE** | ) | |
| **UNITED STATES AND CANADA (AFL-CIO),** | ) | |
| **and PLUMBERS & PIPEFITTERS LOCAL 572** | ) | |
| **BUILDING CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Gipson Mechanical Contractors, Inc. ("Gipson") has filed a Motion to Amend Complaint

(Docket No. 27), to which U.A. Local 572 of the United Association of the Journeymen and

Apprentices of the Plumbing and Pipefitters Industry of the United States and Canada (AFL-CIO)

("U.A. Local 572") and Plumbers & Pipefitters Local 572 Building Corporation ("Local 572

Building Corp.") have filed a Response (Docket No. 28), and Gipson has filed a Reply (Docket

No. 30). For the reasons set out herein, the motion will be granted.

## I. BACKGROUND[1]

Gipson is a construction services corporation specializing in industrial mechanical work,

pipefitting, mechanical service, and related work. U.A. Local 572 is a labor union, and Local 572

Building Corp. is a public benefit corporation formed to acquire and maintain property for labor

---

[1] The facts are taken from Gipson's Amended Complaint unless otherwise indicated.

organizations. In 2008, Gipson opened a new operations branch in Nashville, in order to provide

heavy industrial mechanical work on construction projects and service for existing mechanical

systems in commercial buildings and structures in the surrounding area. Gipson contacted U.A.

Local 572 to arrange for union employees to work on both its construction and commercial services

business operations. Gipson and U.A. Local 572 agreed to be bound by a previously-negotiated

agreement between U.A Local 572 and the master plumbing, heating, piping, and air conditioning

contractors of Middle Tennessee. That agreement was entitled "Working Agreement Between

Plumbers and Pipefitters U.A. Local 572 and the Master Plumbing Heating, Piping and Air

Conditioning Contractors of Nashville and Vicinity" ("2007 Master Agreement"). The parties

subsequently agreed to successor versions of the 2007 Master Agreement—the "2010 Master

Agreement" and "2013 Master Agreement," collectively the "Master Agreements"—that were, for

the purposes of this motion, substantially similar in terms.

The Master Agreements were supplemented with a Memorandum of Understanding,

which included the following provision:

> To compete for commercial work against non-union contractors, the union
> recognizes that the contractors' average cost per hour (including labor burden) must
> be competitive. A "Target Rate" will be established based upon the average hourly
> cost of non-union labor. The union and the contractor mutually agree to use
> increased ratios, promotional funds and any other legal means available to provide
> skilled labor at an average rate equal to the target rate when competing against non-
> union contractors for commercial work. . . .
>
> As economic conditions change, the Target Rate shall be re-calculated and adjusted
> as recommended by the Work Recovery Committee.[2] The hourly rates used to
> forecast the contractor's average labor cost per hour and the Target Rate shall be
> calculated using spreadsheets which are maintained by the Work Recovery
> Committee.

---

[2] The Master Agreements establish terms for the creation and composition of the Work Recovery
Committee.

This provision was intended to level the playing field for union employers. Mechanical contractors who utilize non-union employees typically pay lower wages to their employees than contractors who utilize union employees. Thus, to allow employers who were signatories to the Working Agreements to be able to compete with mechanical contractors who retained non-union employees, the U.A. Local 572 maintained a Market Recovery Fund, from which it would issue grants to the signatory employers in the form of a wage supplement

On January 19, 2018, Gipson transmitted through counsel a demand letter requesting allegedly unpaid sums to which it was entitled under the Market Recovery Fund program. The demand letter included the following passage:

> [M]y client has obtained information that the Local 572 has engaged in a repeated practice of showing preferential treatment regarding the payment of Market Recovery Funds to other mechanical contractors. It is difficult to understand what possible rationale the Local 572 could have to justify the preferential treatment of one mechanical contractor over another. However, one obvious possible explanation for this conduct is the fact that Gipson Mechanical is a minority contractor. Given the importance of minority participation in construction projects of any substantial size, it is difficult to understand why the Local 572 would engage in discriminatory conduct against Gipson Mechanical. However, the process of elimination simply does not provide any other viable explanation for the Local 572's conduct.

(Docket No. 30-1 at 1–2.) On March 2, 2018, counsel for U.A. Local 572 sent a letter in response, "categorically den[ying] that [Gipson] was subjected to any type of discriminatory treatment with regard to the Market Recovery Fund." (Docket No. 30-2 at 1.) The attorney wrote that Gipson's "suggestion that [it] was treated in a disparate fashion due to its status as a minority contractor is frivolous and any such allegation in a lawsuit would be met with a Rule 11 [m]otion." (*Id.*) Finally, U.A. Local 572's attorney alleged that Gipson had "grossly overstated" the amount of money owed to it, but she expressed a willingness to "finalize a resolution on these matters." (*Id.* at 2.) On March 19, 2018, Gipson's counsel responded with another letter, demanding that U.A. Local 572

produce records of the payments made to other employers, in order to establish that Gipson was, in fact, treated equitably as compared to U.A. Local 572's treatment of others who had been entitled to Market Recovery Funds. (Docket No. 30-3 at 2.)

On July 19, 2018, Gipson filed suit against Local 572 Building Corp. in the Circuit Court of Davidson County, Tennessee, alleging breach of contract. (Docket No. 1-2.) On August 16, 2018, Local 572 Building Corp. removed the case to this court pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), which provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." On September 6, 2018, Gipson amended its Complaint, adding U.A. Local 572 as a defendant. (Docket No. 6.)

On September 27, 2018, the defendants filed a Motion to Dismiss. (Docket No. 12.) On January 24, 2019, the court granted the motion in part and denied it in part. (Docket No. 20.) Specifically, the court dismissed Gipson's claim for breach of contract stemming from defective employee work but declined to dismiss the breach of contract claim related to unpaid Market Recovery Fund sums. (*Id.* at 1.)

In the meantime, the parties had begun the early stages of discovery. Gipson again sought information about the grant of Market Recovery Fund payments to other companies, in order to establish that other employers had been treated more favorably than Gipson. (*See* Docket No. 28 at 3.) U.A. Local 572, however, objected to the request, arguing that its disbursement of Market Recovery Funds to other parties was immaterial to any alleged breach of contract between it and Gipson. (*Id.*)

The Initial Case Management Order originally set a deadline of June 11, 2019 for motions to amend the pleadings. (Docket No. 23 ¶ G.) On that date, however, Gipson filed an unopposed

motion to change that deadline to August 10, 2019, in light of ongoing relevant discovery between the parties. (Docket No. 25 ¶¶ 1–2.) The court granted the motion. (Docket No. 26).

On August 10, 2019, Gipson filed a Motion to Amend Complaint. (Docket No. 27.) Gipson seeks to add a claim for race discrimination in violation of 42 U.S.C. § 1981 and supporting facts. (Docket No. 27-1 ¶¶ 61–67.) The defendants oppose the motion, arguing that they will be significantly prejudiced by the addition of a discrimination claim this late in the proceedings and suggesting that the claim is simply an attempt to gain discovery regarding U.A. Local 572's payments to other employers. (Docket No. 28 at 4–6.) The defendants also argue that the amendment would be futile because (1) the § 1981 claims, or at least most of them, would be untimely and (2) Gipson does not set out sufficient facts to support the claim. (*Id.* at 6–11.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course either (a) within twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, the court should "freely" give leave when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend, moreover, may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman*, 371 U.S. at 182).

## III. ANALYSIS

## A. Futility

### 1. Statute of Limitations.

The defendants argue first that Gipson's proposed amendment would be futile because its § 1981 claims would be barred by the statute of limitations. The parties agree that a cause of action under § 1981 is subject to a statute of limitations of four years. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). The Market Recovery Fund awards identified in the proposed Second Amended Complaint spanned from January 1, 2012 until September 18, 2015. (Docket No. 27-1 ¶ 27.) If, therefore, Gipson's claims arose on the date of the awards, then most of its claims would have become untimely unless raised prior to the August 10, 2019 Motion to Amend. Gipson argues, however, that the timeliness of its § 1981 claims should be calculated based on the July 19, 2018 filing of its original Complaint.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment to a pleading relates back to the original pleading's date of filing if the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Gipson's allegations of discrimination arise out of the same transactions as its breach of contract claims—namely, the Market Recovery Fund awards—and, therefore, would seem to fall within the text of Rule 15(c)(1)(B). The defendants point out, however, that the Sixth Circuit has cautioned courts not to "define the scope of the terms 'conduct, transaction, or occurrence'" solely by looking at "generic or ideal notions of what" those words mean. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007). Instead, the Sixth Circuit has suggested that the district court should also consider "whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he [should not] have

been surprised by the amplification of the allegations of the original complaint in the amended one." *Id.* (quoting *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006)).

In this particular case, however, there is no tension between a literal reading of "conduct, transaction, or occurrence" and the Sixth Circuit's less literal, notice-based approach. Gipson has consistently alleged, not only that it was denied Market Recovery Fund payments to which it was entitled, but that it has been treated unfairly under the program relative to other companies. (*See, e.g.*, Docket No. 1-2 ¶¶ 23–32.) Adding a discrimination claim may introduce a new potential explanation for that comparative mistreatment, but the defendants have always been on notice that Gipson was likely to put the reason for any differences in treatment into dispute. The defendants have also known, since before litigation began, that Gipson suspected discrimination, an issue that it raised explicitly in its January 19, 2018 demand letter. Gipson's original Complaint therefore provided ample notice that allegations of this type might arise, and Gipson's new claims relate back to the filing of the Complaint.

*2. Sufficiency of Allegations.* The defendants argue next that Gipson has insufficiently set out facts in support of its discrimination claims, even if those claims are timely. Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts. 42 U.S.C. § 1981(b). To prevail under § 1981, a plaintiff must prove purposeful discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982); *accord McCrary v. Oakwood Healthcare, Inc.*, 170 F. Supp. 3d 981, 986 (E.D. Mich. 2016). The defendants argue that Gipson's allegations of purposeful discrimination are merely conclusory.

The Second Amended Complaint alleges that Gipson's sole shareholder is an African-American man and that the company has been a certified Minority Owned Business Enterprise since at least the late 1980s. (Docket No. 27-1 ¶ 6.) Gipson alleges that its competitors, which also

took part in the Market Recovery Fund program, are not certified Minority Owned Business Enterprises and that "U.A. Local 572 paid substantial Market Recovery funds to other non-minority signatory employers, but paid Gipson Mechanical no Market Recovery funds, or paid relatively small amounts of Market Recovery funds to Gipson Mechanical compared to other non-minority signatory employers." (*Id.* ¶ 45; *see also id.* ¶¶ 16, 32, 40.) Finally, the proposed Second Amended Complaint alleges that the defendants "intentionally deprived Gipson Mechanical of the same rights and privileges as are enjoyed by white persons" in violation of § 1981. (*Id.* ¶ 65.)

Gipson's allegations, viewed together, are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court's duty, at this stage, is only to determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). At least based on the arguments raised by the defendants so far, Gipson's § 1981 claims clear that bar, and allowing amendment would not be futile.

## B. Prejudice and Other Concerns.

Unlike the issue of futility, which typically hinges on questions of law, the remaining factors relevant to a motion to amend are within the court's discretion to weigh in the manner that the court ultimately concludes to be most consistent with the interests of justice. *See Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) ("The denial of a motion for leave to amend is reviewed for abuse of discretion, except to the extent that the decision is based on a legal conclusion that the amendment would not withstand a motion to dismiss.") (citations omitted). The defendants argue that allowing Gipson to add a discrimination claim after more than a year of litigation and with only limited time left in discovery would be prejudicial to their defense, which

has, so far, been premised on the assumption that only a breach of contract was at issue. Gipson responds that the defendants have known, since before litigation began, that the conflict between the parties regarding the Market Recovery Fund was closely related to Gipson's belief that it was being treated unfairly relative to other companies. The defendants were also informed, prior to litigation, that Gipson suspected that its allegedly worse treatment was the result of discrimination.

Gipson is probably overstating the degree to which its pre-litigation statements mitigate any prejudice to the defendant from adding a discrimination claim now. The fact that the defendants knew that Gipson suspected discrimination does not negate the fact that there was no discrimination claim in the original Complaint. Indeed, the defendants could have reasonably concluded that, because Gipson suspected discrimination but did not pursue a claim based on it, Gipson had evaluated the issue and affirmatively decided to restrict its claims to the contracts. Nevertheless, even viewing the underlying events in the light most favorable to the defendants' position, the court does not see evidence of enough prejudice to preclude amendment. The core of the case will remain the same even with the amendment, and the developing discovery dispute between the parties seems unlikely to be averted regardless of whether amendment is allowed. Moreover, some of the potential prejudice associated with allowing the amendments now is the fault of the court, not Gipson, because the court was unable to rule on this motion sooner.

Finally, the defendants suggest that Gipson's true motive in seeking the amendment is to strengthen its hand in the discovery dispute regarding Market Recovery Fund payments to other companies. The fact that Gipson raised its suspicion of discrimination well before litigation, however, weighs against any finding of bad faith here. An amendment is, moreover, not the result of bad faith merely because it would bring with it a litigation advantage beyond merely the availability of a new claim. All pleadings are, presumably, crafted with litigation strategy at least

somewhat in mind. The court sees no evidence that Gipson has departed from ordinary practice in such a way that would justify denying an otherwise supported motion to amend. Gipson's motion, therefore, will be granted.

## CONCLUSION

For the foregoing reasons, Gipson's Motion to Amend Complaint (Docket No. 27) is hereby **GRANTED**. The Clerk's Office is **DIRECTED** to enter Gipson's proposed Second Amended Complaint (Docket No. 27-1) onto the docket as its Second Amended Complaint.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge